John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alejandro Marin (SBN 329185)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*alejandro@kristensenlaw.com*

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MAYA LOEWE, an individual, on behalf of herself and all those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LONG KIM HUOT, an individual; RONALD LEE MCKINNEY, JR., an individual; TAWNY HUOT, an individual; TODD & KATIE, INC. dba PARADISE SHOWGIRLS, a California business entity; DISCOVER ENTERTAINMENT, LLC dba SATIN GENTLEMAN'S CLUB; FIGUEROA GROUP, INC. dba RIO'S GENTLEMAN'S CLUB; DOE MANAGERS 1-3; and DOES 4-100, inclusive,<br><br>Defendants. | ) Case No.: 2:19-CV-08346-CBM-SKx<br>)<br>) **JOINT AMENDED MOTION FOR**<br>) **APPROVAL OF FLSA**<br>) **SETTLEMENT**<br>)<br>) **Hearing**<br>) Date:    December 1, 2020<br>) Time:    10:00 a.m.<br>) Dept:    8B<br>) Judge:    Hon. Consuelo B. Marshall<br>)<br>) Complaint Filed:  September 26, 2019<br>) Trial Date:        February 16, 2021<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1    **TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR**

2    **ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on Tuesday, December 1, 2020 at 10:00

4    a.m. in Department 8B of the United States District Court for the Central District

5    of California, located at 350 West 1st Street, Los Angeles, California 90012,

6    plaintiffs Maya Loewe, Reychel Valdivia, Angie Ortega, Cianna Robinson,

7    Candace Morinaga, Jacqueline Escalona Ruiz, Brittany Thomas, and Sara Galan

8    (collectively, "Plaintiffs") and defendants Long Kim Huot, Ronald Lee

9    McKinney, Jr., Tawny Huot, Todd & Katie, Inc. dba Paradise Showgirls,

10    Discover Entertainment, Inc. dba Satin Gentlemen's Club, and Figueroa Group,

11    Inc. dba Rio's Gentlemen's Club (collectively, "Defendants") (Plaintiffs and

12    Defendants will be referred to collectively as the "Parties"), by and through their

13    undersigned counsel, hereby request approval of the settlement agreements (the

14    "Agreements") reached between the Parties.[1]

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22

23       [1] Plaintiff Beatrice Lopez consented to join in this matter on April 3, 2020. *See*

24    Dkt. No. 56. On July 29, 2020 the Parties submitted a Joint Stipulation to submit to Arbitration which was approved. *See* Dkt. 78. Ms. Lopez is also a

25    Plaintiff in *Perez v. Discover Entertainment, Inc.*, *et al.* No. 2:20-cv-03199-

26    CBM-SKx (C.D. Cal.), which involves similar individual defendants and a different corporate entity. Similarly, in the *Perez* action, the parties submitted a

27    Joint Stipulation to submit to Arbitration which was approved. *See* Dkt. 25 in

28    the *Perez* action.

The Agreements are attached as exhibits to the Declaration of John P. Kristensen filed concurrently with this Joint Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 23, Exhibits ("Exs.") 1-8. The Parties submit that the Court should approve the Settlement for the reasons described below. This Motion is made following the multiple conferences of counsel pursuant to L.R. 7-3 which took place prior to filing this motion.

Dated:  November 3, 2020                    **KRISTENSEN LLP**

                                            /s/ *John P. Kristensen*
                                            John P. Kristensen
                                            Jesenia A. Martinez
                                            Alejandro Marin
                                            *Attorneys for Plaintiffs*

Dated:  November 3, 2020                    **WESTON, GARROU & MOONEY**

                                            /s/ *Jerome H. Mooney (with permission)*
                                            Jerome H. Mooney
                                            *Attorneys for Defendants*

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................... **1**

**I.**   **INTRODUCTION** ................................................................................. **1**

**II.**  **RESPONSE TO THE COURT'S CONCERNS IN DENYING THE
ORIGINAL MOTION** ........................................................................ **2**

**III.** **FACTUAL BACKGROUND** ............................................................... **3**

**IV.**  **LEGAL GROUNDS OF PLAINTIFFS' CLAIMS** ..................................... **3**

**V.**   **THE SETTLEMENT AGREEMENT** ..................................................... **4**

**VI.**  **STANDARD FOR APPROVAL OF FLSA SETTLEMENTS** ....................... **8**

**VII.** **APPROVAL OF THE FLSA SETTLEMENT** ........................................ **10**

        **A.**   **Bona Fide Dispute** ............................................................. **10**

        **B.**   **Fair and Reasonable Resolution** ....................................... **11**

                **1.**   *Plaintiffs' Possible Range of Recovery* ........................ **12**

                **2.**   *The Stage of Proceedings and Amount of
                        Discovery Completed* ..................................................... **14**

                **3.**   *Seriousness of the Litigation Risks Faced by the
                        Parties* ........................................................................... **15**

                **4.**   *Scope of Any Release Provision in the Settlement
                        Agreement* ...................................................................... **15**

                **5.**   *Experience and Views of Counsel and Opinion of
                        Participating Plaintiffs* ................................................ **16**

                **6.**   *Possibility of Fraud or Collusion* .................................. **17**

**VIII.** **ATTORNEYS' FEES** ....................................................................... **18**

**IX.**  **THE COSTS** ................................................................................... **23**

**X.**   **CONCLUSION** ................................................................................ **23**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarez v. Farmers Ins. Exch.*,
     No. 3:14-CV-00574-WHO, 2017 WL 2214585
     (N.D. Cal. Jan. 18, 2017)....................................................................22

*Ambrosino v. Home Depot. U.S.A., Inc.*,
     No. 11-CV-1319-MDD, 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014)....16

*Association of Disabled Americans v. Neptune Designs, Inc.*,
     469 F.3d 1357 (11th Cir.2006).............................................................18

*Barrentine v. Arkansas–Best Freight System*,
     450 U.S. 728 (1981) ...............................................................................9

*Benshoff v. City of Virginia Beach*,
     180 F.3d 136 (4th Cir. 1999).................................................................13

*Berry v. Great American Dream, Inc.*,
     No. 1:13-CV-3297-TWT, 2014 WL 5822691
     (N.D. Ga. Nov. 10, 2014)......................................................................13

*Bivins v. Wrap It Up, Inc.*,
     548 F.3d 1348 (11th Cir. 2008).............................................................18

*Camden I Condo. Ass'n., Inc. v. Dunkle*,
     946 F.2d 768 (11th Cir. 1991)...............................................................22

*Canh Le v. DirecTV, LLC*,
     No. 2:16-cv-01369-SVW-AS, 2017 U.S. Dist. LEXIS 221945
     (C.D. Cal. Nov. 2, 2017) .......................................................................13

*Cheeks v. Freeport Pancake House, Inc.*,
     796 F.3d 199 (2d Cir. 2015).................................................................14

*Cicero v. DirecTV, Inc.*,
     No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010)..........22

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)....................................................................16

*Clincy v. Galardi South Enter., Inc.*,
  808 F.Supp.2d 1326 (N.D. Ga. 2011) .........................................................13

*Collins v. Sanderson Farms*,
  568 F.Supp.2d 714 (E.D. La. 2008) ............................................................10

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977)......................................................................9

*Crabtree v, Volkert, Inc.*,
  No. 11-0529-WS-B, 2013 WL 593500 (S.D. Ala. Feb. 14, 2013) ......21, 22

*Crosby v. King Henry VIII, Inc., et al.*,
  No. 2:19-cv-10921-CBM-MRW (C.D. Cal. May 13, 2020)...................6, 7

*Cullens v. Georgia Dep't of Transp.*,
  29 F.3d 1489(11th Cir.1994)......................................................................18

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
  No. 13-cv-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) .........8

*Espinoza, et al. v. Fly Low*,
  No. 12-cv-21244-Goodman (S.D. Fla. Sep. 20, 2018) ...............................6

*Garcia v. Jambox, Inc.*,
  No. 14-CV-3504-MHD, 2015 WL 2359502 (S.D.N.Y. Apr. 27, 2015)....16

*Glass v. UBS Financial Services, Inc.*,
  No. 06-CV-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)......12

*Gomez v. H & R Gunlund Ranches, Inc.*,
  No. CV F 10-1163 LJO MJS, 2011 WL 5884224
  (E.D. Cal. Nov. 23, 2011) ..........................................................................22

*Gonzalez v. Fallanghina, LLC*,
  No. 16-cv-01832-MEJ, 2017 WL 1374582 (N.D. Cal. Apr. 17, 2017).....10

*Greer v. Pac. Gas & Elec. Co.*,
　　No. 15-CV-1066-EPG, 2018 WL 2059802 (E.D. Cal. May 3, 2018) .......12

*Harrell v. Diamond A Entm't, Inc.*,
　　992 F.Supp. 1343 (M.D. Fla. 1997) ...........................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
　　654 F.3d 935 (9th Cir. 2011) ....................................................................17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
　　55 F.3d 768 (3rd Cir. 1995)...........................................................................9

*Jennings v. Open Door Mktg., LLC*,
　　No. 15-CV-4080-KAW, 2018 WL 4773057
　　(N.D. Cal. Oct. 3, 2018) ....................................................10, 11, 12, 14, 15

*Johnson v. MetLife, Inc.*,
　　No. SACV 13-128-JLS, 2014 WL 12773568 (C.D. Cal. Nov. 6, 2014) ...12

*Johnson v. The Strip Joint, et al.*,
　　No. 8:19-cv-1623-JVS-KES (C.D. Cal. Jan. 31, 2020) ...............6, 7, 16, 22

*Kerzich v. County of Tuolumne*,
　　335 F.Supp.3d 1179 (E.D. Cal. Aug. 14, 2018)....................................18, 21

*King v. My Online Neighborhood*,
　　No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575
　　(M.D. Fla. March 7, 2007) ...........................................................................9

*King v. Southern Neurophysiology, Inc.*,
　　No. 2:12-CV-0217-WCO (N.D.Ga. Apr. 18, 2013)....................................22

*Larsen v. Trader Joe's Co.*,
　　No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ....17

*Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*,
　　18 F.3d 1527 (11th Cir. 1994)......................................................................9

*Levi v. Gulliver's Tavern, Incorporated*,
　　No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ...........13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)...................................................................15

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982).........................................................8, 9, 11

*Madrid v. teleNetwork Partners, LTD.*,
    No. 5:17-cv-04519-BLF, 2019 WL 3302812 (N.D. Cal. July 23, 2019)...10

*Mason v. Fantasy, LLC*,
    No. 13-CV-02020-RM-KLM, 2015 WL 4512327
    (D. Colo. July 27, 2015)...................................................................13

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
    No. 10-CV-5243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012).....16

*Oregon Restaurant and Lodging Ass'n v. Perez*,
    816 F.3d 1080 (9th Cir. 2016)...............................................................1, 4

*Otey v. CrowdFlower, Inc.*,
    No. 12-cv-05524, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014)...............8

*Otey v. CrowdFlower, Inc.*,
    No. 12-cv-05524, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ...............8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006)...................................................................16

*Reynolds v. Alabama Dep't of Transp.*,
    926 F.Supp. 1448 (M.D.Ala.1995) ...........................................................19

*Rodriguez v. Nationwide Mutual Ins.Co., et al.*,
    No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796
    (C.D. Cal. Nov. 16, 2017) ...........................................................................8

*Saleh v. Valbin Corp.*,
    No. 17-CV-0593-LHK, 2018 WL 6002320 (N.D. Cal. Nov. 15, 2018)....11

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F.Supp.3d 1164 (S.D. Cal. 2016)..........................10, 11, 12, 16, 17, 18

*Slezak v. City of Palo Alto*,
        No. 16-CV-03224-LHK, 2017 WL 2688224
        (N.D. Cal. June 22, 2017)............................................................15, 16, 17

*Soler v. G & U, Inc.*,
        658 F.Supp. 1093 (S.D.N.Y. 1987)............................................................14

*Stevenson v. Great American Dream, Inc.*,
        No. 1:12-CV-3359-TWT, 2013 WL 6880921
        (N.D. Ga. Dec. 31, 2013) ...........................................................................13

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
        471 U.S. 290 (1985) ...................................................................................14

*Trinidad v. Pret a Manger (USA) Ltd.*,
        No. 12-cv-6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014)....14

*Valente v. International Follies, Inc. d/b/a Cheetah et al* .
        No. 1:15-CV-2477-ELR (N.D. Ga. Feb. 8, 2018)......................................22

*Verma v. 3001 Castor, Inc.*,
        No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014).......................13

*Whittington v. Taco Bell of Am., Inc* .,
        No. 10-cv-01884-KMT-MEH, 2013 WL 6022972
        (D.Colo. Nov. 13, 2013)..............................................................................22

*Wolinsky v. Scholastic, Inc.*,
        900 F.Supp.2d 332 (S.D.N.Y. 2012)...........................................................18

*Woodmore v. Solitaire Holdings, LLC dba Knockouts*,
        No. 2:19-cv-09017-RGK-AGR (Feb. 9, 2020) ................................7, 16, 22

**Statutes**

29 U.S.C. § 203.......................................................................................................1

29 U.S.C. § 203(m).................................................................................................4

29 U.S.C. § 206.......................................................................................................1

29 U.S.C. § 207 ..................................................................................................1

29 U.S.C. § 216(b) ................................................................................2, 9, 15, 18

29 U.S.C. §§ 201, *et seq.* ..................................................................................1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Maya Loewe ("Loewe"), Reychel Valdivia ("Valdivia"), Angie Ortega ("Ortega"), Cianna Robinson ("Robinson"), Candace Morinaga ("Morinaga"), Jacqueline Escalona Ruiz ("Ruiz"), Brittany Thomas ("Thomas"), and Sara Galan ("Galan") (collectively "Plaintiffs") were exotic dancers at five separate adult entertainment venues named as defendants in this case, and/or in the amended complaint: (1) Rio's Gentlemen's Club in Los Angeles ("Rio's"); (2) Satin Gentlemen's Club in City of Industry ("Satin"); (3) Paradise Showgirls in City of Industry ("Paradise");  (4) Knockouts in Arcadia ("Knockouts"); and Sahara Theater in Orange County ("Sahara"). *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 24.

As part of the agreements, the Plaintiffs are resolving all claims against the consortium of clubs operated by defendants Long Kim Huot, Ronald Lee McKinney, Jr., Tawny Huot, Todd & Katie, Inc. dba Paradise Showgirls, Discover Entertainment, Inc. dba Satin Gentlemen's Club, Figueroa Group, Inc. dba Rio's Gentlemen's Club, Solitaire Holdins dba Knockouts, and Team Sahara, Inc. dba Sahara Theatre (collectively, "Defendants") (Plaintiffs and Defendants will be referred to collectively as the "Parties"). *See* Kristensen Decl. ¶ 25.

On September 26, 2019, Loewe filed the instant action with a causes of action for: (1) Failure to pay minimum wages, 29 U.S.C. § 206; (2) Failure to pay overtime wages, 29 U.S.C. § 207; and (3) Unlawful taking of tips, 29 U.S.C. § 203, pursuant to *Oregon Restaurant and Lodging Ass'n v. Perez*, 816 F.3d 1080 (9th Cir. 2016). *See* Dkt. 1. The causes of action were based on misclassification of the Loewe as an "independent contractor." The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* is more employer friendly than California Supreme Court decisional authority regarding independent contractor classification. The third cause of action was for illegal tip pooling/forced tip

1   sharing. The FLSA is also more employee friendly than California's Court of

2   Appeal decisional authority regarding tip pooling. *See* Kristensen Decl. ¶ 26.

3   **II.   RESPONSE TO THE COURT'S CONCERNS IN DENYING THE ORIGINAL**

4       **MOTION**

5       This Court raised four concerns regarding this settlement. The specifics are

6   addressed in greater detail later in brief. The four issues were: (1) the attorneys'

7   fees request for 45%; (2) amending the Complaint; (3) the damages model for

8   Robinson and Galan; (4) clarifying the costs.

9       In order to effectuate the settlement, Plaintiffs' counsel is seeking approval

10  of attorneys' fees of 35% of the settlement funds which is essentially at Plaintiffs'

11  counsel's lodestar and a percentage of the fund approved by numerous Courts in

12  FLSA cases.

13      The Parties are filing a stipulation to permit leave to file a First Amended

14  Complaint. The proposed pleading adds the two other defendants Solitaire

15  Holdings dba Knockouts and Team Sahara, Inc. dba Sahara Theater. Also, the

16  amended pleading includes additional FLSA causes of action (for illegal

17  kickbacks) and a plethora of related California state law claims consistent with the

18  releases.

19      The damages models for Robinson and Galan are addressed in more

20  detailed in this motion.

21      Lastly, Plaintiffs' costs are included in more detailed. For example, the

22  charges/costs from Los Angeles Superior Court were for downloads/copies of

23  pleadings from prior lawsuits involving Defendants that Plaintiffs' counsel

24  purchased while investigating the claims.

25      As this Court was aware, the Parties were actively engaged in discovery,

26  there was a motion for notice pursuant to 29 U.S.C. § 216(b) and there were two

27  motions to compel arbitration pending. After attending a full day mediation with

28  Hon. Louis Meisinger (Ret.) on April 21, 2020, the Parties reached the resolution

1   as described in the Agreements for which they are now seeking approval. *See*

2   Kristensen Decl. ¶ 28.

3   **III.   FACTUAL BACKGROUND**

4       Plaintiffs were exotic dancers at Rio's, Satin, Knockouts, Sahara, and/or

5   Paradise within the three years prior to the filing of the lawsuit or the date they

6   opted in as Plaintiffs. Loewe worked at all three clubs at different periods.

7   Valdivia and Ortega worked at Rio's. The other dancers worked at Satin. Galan,

8   who worked at Satin, was also employed by Sahara. Robinson also worked at

9   Knockouts. *See* Kristensen Decl. ¶ 29.

10  **IV.   LEGAL GROUNDS OF PLAINTIFFS' CLAIMS**

11      Plaintiffs differentiated five types of claims for the dancers. The first two

12  were for failure to pay minimum wage or overtime. In the beginning of 2019,

13  Rio's, Satin, Knockouts, Sahara, and/or Paradise all converted and began to start

14  paying dancers hourly. That was a factor in the settlement amounts. However,

15  Plaintiffs also had three other forms of damages that they contended they were

16  owed by the Defendants. *See* Kristensen Decl. ¶ 30.

17      First, Plaintiffs contend that dancers were charged house fees to work,

18  which fees were illegal kickbacks pursuant to 29 C.F.R. § 531.35. *See* Kristensen

19  Decl. ¶ 31. That regulation states, in pertinent part, as follows:

20          Whether in cash or in facilities, "wages" cannot be

21          considered to have been paid by the employer and
        received by the employee unless they are paid finally and

22          unconditionally or "free and clear." The wage

23          requirements of the Act will not be met where
        the employee "kicks-back" directly or indirectly to the

24          employer or to another person for the employer's benefit

25          the whole or part of the wage delivered to the employee.

26      Plaintiffs also had claims for two types of tipping violations. First, the

27  dancers were "encouraged" to tip the DJs, daily managers and security. The

28  forced tipping, Plaintiffs' contend, is also a violation of 29 C.F.R. § 531.35, as it

results in the dancers subsidizing the clubs' payment of wages to other employees. The second form of claimed damages for tips was the of individual private dances to customers which was retained by Defendants rather than being paid to Dancers. Defendants maintain these fees were fees charged by them and belonging to them. Plaintiffs allege these were tips that belonged to them and were improperly taken. California state law regarding tip sharing is less favorable than the FLSA. In 2016, the Ninth Circuit ruled on the legality of a 2011 Department of Labor rule that extended the tip pool restrictions of Section 203(m) to all employers, not just those who take a tip credit. The United States District Courts for the District of Oregon and District of Nevada invalidated the ruling. The Ninth Circuit upheld it. *Oregon Restaurant and Lodging Ass'n*, 816 F.3d at 1080; *see* Kristensen Decl. ¶ 31.

Thus, when Plaintiffs mediated this matter, there were four to five levels of claimed damages for each dancer that went into the valuation of the claims. There was also substantial debate regarding the number of shifts or dates each dancer worked. The clubs' records since converting to hourly pay were considered more reliable by the Plaintiffs and their counsel than the pre-2019 records. *See* Kristensen Decl. ¶ 32.

Defendants disagree with Plaintiffs' factual assertions. Defendants contend Plaintiffs were independent contractors prior to 2019 and were properly classified as such. Defendants maintain that from and after 2019 Plaintiffs were properly classified as employees and were fully and properly paid as employees. Moreover, Defendants sought to enforce arbitration agreements for all of the Plaintiffs. *See* Kristensen Decl. ¶ 33.

## V.     THE SETTLEMENT AGREEMENT

Under the Agreements, Defendants have agreed to pay Plaintiffs a gross settlement of $850,000 in two payments. The first half will be paid within 20 days of an Order by this Court approving the settlement. The second payment must be

made by April 21, 2021. There are some triggering events requiring the parties to negotiate earlier payment (if the clubs re-open after the COVID-19 related lockdowns). If payment is not made, the Agreements contain stipulated judgments, enabling Plaintiffs to promptly enforce judgments for the remaining amounts owed. *See* Kristensen Decl. ¶¶ 23, 34; Exs. 1-8.

The allocations to the individual Plaintiffs are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Candace Morinaga | $170,000 |
| Jacqueline Escalona Ruiz | $170,000 |
| Reychel Valdivia | $126,000 |
| Angie Ortega | $126,000 |
| Maya Loewe | $102,000 |
| Sara Galan | $75,000 |
| Cianna Robinson | $45,000 |
| Brittany Thomas | $36,000 |
| **TOTAL** | **$850,000** |

Morinaga and Ruiz both began working at Satin before the three-year statute of limitations. Thus, their claims covered the entire three year period. Plaintiffs' counsel anticipated that their damages ranges, had the case proceeded to trial, to be in the $250,000 range. Valdivia and Ortega's damages models were in the $175,000 ranges as they did work not as frequently as Morinaga and Ruiz, and the size of the house fees and tips were larger at Satin. Valdivia worked more frequently than Ortega, but started in September 2017, resulting in a 27-month claim period. Loewe worked at Rio's for approximately seven months. Loewe worked at Satin over a two-year period, with gaps and less often than Ruiz and Morinaga. Loewe only danced at Paradise for a handful of nights within the statutory period. Loewe's damages claim at trial would have been in the $125,000

to $145,000 range.

Galan worked at Satin for 10 months in 2019, mostly after the conversion. She also worked at Sahara during the statutory time period. Galan's damages model would have been in a range of $100,000 to $125,000. Since her period of work was after the conversion it was not considered as strong as the other claims.

Robinson worked at Satin and Knockouts in 2019 and 2020. Plaintiffs' counsel anticipated that her damages ranges, had the cases against both proceeded to trial, to be in the $55,000 to $60,000 range. Thomas worked at Satin beginning in 2018, right before the conversion. Thomas contended she worked approximately 100 shifts, which was disputed by Defendants. Her claim at trial was estimated at $43,000. *See* Kristensen Decl. ¶ 35.

Defendants' records had different amounts of shifts for each dancer. That played a role in weighing the value of each claim. *See* Kristensen Decl. ¶ 36; *see also* Declaration of Jerome H. Mooney ("Mooney Decl.") ¶¶ 2-3.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Kristensen Decl. ¶¶ 2-22. As this Court is aware, the plaintiff in the King Henry VIII action accepted an offer of judgment for just $30,000. *See Crosby v. King Henry VIII, Inc., et al.*, No. 2:19-cv-10921-CBM-MRW, Dkt. 51 (C.D. Cal. May 13, 2020). Plaintiffs' counsel resolved a similar case for $85,000. That settlement was approved by Judge Selna. *See Johnson v. The Strip Joint, et al.*, No. 8:19-cv-1623-JVS-KES, Dkt. 29 (C.D. Cal. Jan. 31, 2020).

For further context, in the Southern District of Florida, similar FLSA claims went to trial. A pre-attorneys' fees judgment for nine plaintiffs totaling approximately $1.7 million was entered on September 20, 2018. *See* Kristensen Decl. ¶ 37, Ex. 9 (Final Money Judgment, *Espinoza, et al. v. Fly Low*, No. 12-cv-21244-Goodman, Dkt. 365 (S.D. Fla. Sep. 20, 2018)).

///

Plaintiffs' counsel incurred $16,044.16 in costs that are being allocated evenly to the Plaintiffs. [2] *See* Kristensen Decl. ¶ 38, Ex. 10. Plaintiffs' counsel original lodestar was $273,028.50[3]. In the past five months, Plaintiffs' counsel have been frequently advising Plaintiffs of the status of the motion, communicating with defense counsel, and providing status reports to this Court. Additional work has occurred and increased the lodestar to approximately $290,000. *See* Kristensen Decl. ¶ 39. Per the retainer agreements and the release signed by the Plaintiffs, their counsel is entitled to 45% of the settlement. Judge Selna and Judge Klausner have approved the same fee agreement structure in *Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31, 2020) and *Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020). *See* Kristensen Decl. ¶ 40; Exs. 11-12.

Nevertheless, Plaintiffs' counsel is seeking 35% of the fund, not 45% in order to effectuate this settlement.

Plaintiffs' counsel litigated these cases extensively. The settlement amounts are significant amounts and take into account: the amount of time litigated; having to litigate a number of claims in arbitrations; the ability to reach resolution and collect, which is relevant in this current unknown economic environment. *See* Kristensen Decl. ¶ 41. These were significant settlements.

In exchange for the consideration described above, Plaintiffs have agreed to dismiss their causes of action for alleged violations of the FLSA and the state

---

[2] Plaintiffs' counsel received additional invoices after the Settlement Agreements were signed so the total number of costs is higher, but Plaintiffs are requesting reimbursable costs of only $16,044.16 as stated in each Settlement Agreement ($2,005.52 * 8) = $16,044.16.

[3] Plaintiffs' counsel worked with co-counsel Jarret L. Ellzey of Hughes Ellzey in Texas and Jonah Flynn in Georgia. Had this matter progressed, Mr. Ellzey and Mr. Flynn would have sought *pro hac vice* admission in this matter as Mr. Ellzey did in *Crosby v. King Henry VIII, Inc., et al.*, No. 2:19-cv-10921-CBM-MRW, Dkt. 27 (Mar. 3, 2020).

1  wage and hour claims stemming from Plaintiffs' employment with the

2  Defendants. *See* Kristensen Decl. ¶¶ 23, 42; Exs. 1-8.

3  **VI.    STANDARD FOR APPROVAL OF FLSA SETTLEMENTS**

4         "When employees bring a private action for back wages under the [FLSA],

5  and present to the district court a proposed settlement, the district court may enter

6  a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*

7  *Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Because "[t]he

8  Ninth Circuit has not established the criteria that a district court must consider in

9  determining whether an FLSA settlement warrants approval," district courts in

10  this Circuit widely follow the Eleventh Circuit's *Lynn's Food Stores* standard.

11  *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL

12  153266, at *3 (N.D. Cal. Jan. 13, 2016); *Rodriguez v. Nationwide Mutual Ins.Co.,*

13  *et al.*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov.

14  16, 2017).

15         Most courts hold that an employee's overtime claim under FLSA is non-

16  waivable and, therefore, cannot be settled without supervision of either the

17  Secretary of Labor or a district court. *See Lynn's Food Stores*, 679 F.2d at 1352-

18  55; *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at

19  *3 & n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases applying *Lynn's Food*

20  *Stores*).

21         Under *Lynn's Food Stores*, a district court may approve an FLSA

22  settlement only if it reflects "a fair and reasonable resolution of a bona fide

23  dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524,

24  2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*,

25  679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a

26  reasonable compromise over issues, such as FLSA coverage or computation of

27  back wages, that are actually in dispute; we allow the district court to approve the

28  settlement in order to promote the policy of encouraging settlement of litigation."

*Lynn's Food Stores*, 679 F.2d at 1354. The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

The Eleventh Circuit, following *Lynn's Food Stores*, in determining whether a settlement is fair and reasonable identified the factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal

citations omitted)). As discussed below, those factors strongly favor approval of this settlement.

## VII.   APPROVAL OF THE FLSA SETTLEMENT

### A.   Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812, at *3 (N.D. Cal. July 23, 2019); *see Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F.Supp.2d 714, 719-720 (E.D. La. 2008)).

The Court should approve the settlement because it reflects a reasonable compromise of bona fide dispute regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith, arms' length negotiation between the Parties aided by mediator Judge Meisinger. Defense counsel, Jerome H. Mooney, and his firm has represented exotic dance clubs in Southern California for decades. *See* Mooney Decl. ¶¶ 2-3. Mr. Kristensen has tried multiple employment cases and obtained substantial settlements against employers, including against another exotic dance club in excess of a million dollars. Mr. Kristensen has been appointed class counsel, including three times in 2019 alone. Kristensen Decl. ¶¶ 2-22, 43.

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fee

1   charged by and collected by the Defendants belonged to the Defendants or was a

2   tip belonging to the Plaintiffs. The Parties engaged in discovery, including the

3   production of documents, depositions, a discovery motion, a motion for notice

4   pursuant to section 216(b) of the FLSA, and briefed multiple motions to compel

5   arbitration. Counsel were cognizant and aware of each other's arguments and

6   positions pertaining to employee classification. With the help of an experienced

7   mediator, the Parties defended their positions about the disputed aspects of the

8   case and a resolution was reached. *See* Kristensen Decl. ¶ 44.

9       Because the Parties disputed these aspects of the case, the purpose of the

10  bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*,

11  No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018)

12  (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is

13  to ensure that an employee does not waive claims for wages, overtime

14  compensation, or liquidated damages when no actual dispute exists between the

15  parties.").

16      **B.      Fair and Reasonable Resolution**

17      To determine whether the settlement is fair and reasonable, the Court looks

18  to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159

19  F.Supp.3d at 1173. In making this determination, courts consider the following

20  factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings

21  and amount of discovery completed; (3) the seriousness of the litigation risks

22  faced by the parties; (4) the scope of any release provision in the settlement

23  agreement; (5) the experience and views of counsel and the opinion of

24  participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*;

25  *Jennings*, 2018 WL 4773057, at *4. The Parties will address each of these factors

26  accordingly.

27  ///

28  ///

1

### 1.    *Plaintiffs' Possible Range of Recovery*

Regarding Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See*, *e.g*., *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc*., No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co*., No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc*., No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Morinaga and Ruiz both began working at Satin before the three-year statute of limitations. Thus, their claims covered the entire three year period. Plaintiffs' counsel anticipated that their damages ranges, had the case proceeded to trial, to be in the $250,000 range. Valdivia and Ortega's damages models were in the $175,000 ranges as they did work not as frequently as Morinaga and Ruiz, and the size of the house fees and tips were larger at Satin. Valdivia worked more frequently than Ortega, but started in September 2017, resulting in a 27-month claim period. Loewe worked at Rio's for approximately seven months. Loewe worked at Satin over a two-year period, with gaps and less often than Ruiz and Morinaga. Loewe only danced at Paradise for a handful of nights within the statutory period. Loewe's damages claim at trial would have been in the $125,000 to $145,000 range.

The Court requested more details about Galan, Robinson, and Thomas' damages. Galan worked at Satin for 10 months in 2019, mostly after the conversion. She also worked at Sahara during the statutory time period. Galan's damages model would have been in a range of $100,000 to $125,000. Since her period of work was after the conversion it was not considered as strong as the other claims. Robinson worked at Satin and Knockouts in 2019 and 2020. Plaintiffs' counsel anticipated that her damages ranges, had the cases against both

proceeded to trial, to be in the $55,000 to $60,000 range. Thomas worked at Satin beginning in 2018, right before the conversion. Thomas contended she worked approximately 100 shifts; Defendants' dispute this as their records show a substantially lower figure. Her claim at trial was estimated at $43,000. The Defendants' records and the corresponding ability of plaintiffs to produce documentation corroborating their claimed amount of employment, factored into the settlement amounts. *See* Kristensen Decl. ¶ 45.

Had this matter proceeded to trial (or arbitrations), the damages awarded were within the ballpark of the settlement amount and are all significantly above the 25%-35% reasonable percentage. The risk for Defendants was that in a fee-bearing case, with a real likelihood of liability, the attorneys' fees would dwarf the damages.[4] *See* Kristensen Decl. ¶ 46.

---

[4]    Multiple district courts have found an employment relationship and required clubs to pay dancers a minimum wage. *See Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Clincy v. Galardi South Enter., Inc.*, 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Stevenson v. Great American Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc*., No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (Gentlemen's Club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Mason v. Fantasy*, *LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc*., No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014): *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA). However, "Plaintiffs bear the burden of proving that they were employees covered under FLSA." *Canh Le v. DirecTV, LLC*, No. 2:16-cv-01369-SVW-AS, 2017 U.S. Dist. LEXIS 221945, at *10-11 (C.D. Cal. Nov. 2, 2017) (citing *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999) ("Those seeking compensation under the Act bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act.") "While the burden under California law may be different, the burden under FLSA is on the Plaintiffs." *Id.*

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The Agreements reflect substantial awards to Plaintiffs. These resolutions may help set benchmarks for other settlements in FLSA dancers' cases. Counsel spent considerable time litigating the matter which is evidenced in the lodestar of $273,021. *See* Kristensen Decl. ¶¶ 39, 47; Exs. 1-12. Plaintiffs' counsel's skill, tenacity and the potential of a large attorneys' fees aware contributed to the overall settlement. *See* Kristensen Decl ¶ 2-22, 48; *see* Mooney Decl. ¶¶ 2-3. This settlement is very favorable to Plaintiffs, and in light of the work performed in the lawsuit and the juncture of the settlement in the litigation, the settlement amounts are reasonable.

### 2.   *The Stage of Proceedings and Amount of Discovery Completed*

The Court must next assess "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL

2688224, at *4 (N.D. Cal. June 22, 2017)). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

The Parties had engaged in written discovery and depositions (with more planned) by the time mediation took place. As the Court is aware, the Parties had fully briefed several motions before the Court that were pending, including Plaintiff's motion for issuance of notice pursuant to section 216(b) of the FLSA and Defendants' two motions to compel arbitration. The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good understanding of the merits of their positions by the time of the mediation, which led to the settlement reached. *See* Kristensen Decl. ¶ 49.

### 3.    *Seriousness of the Litigation Risks Faced by the Parties*

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Several facts in this case potentially jeopardize Plaintiffs' recovery should this case proceed to trial (or arbitration), including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, and Plaintiffs' potential inability to prove that Defendants' alleged violations were willful. Accordingly, further litigation might result in Plaintiffs recovering less than the Settlement or perhaps nothing at all, so this factor weighs in favor of approving the FLSA settlement. *See* Kristensen Decl. ¶ 50.

### 4.    *Scope of Any Release Provision in the Settlement Agreement*

Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See*, *e.g*., *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. 10-CV-5243-SBA, 2012 WL 6629608, at *5

(N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general release provision of all claims related to their employment in an FLSA settlement); *Garcia v. Jambox, Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had "no relationship whatsoever" to wage and hour issues); *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11-CV-1319-MDD, 2014 WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F.Supp.3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

The Settlement Agreements here are similar to others approved in this District. *See Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31, 2020); *see also Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020).

Furthermore, Plaintiffs have sought to file a First Amended Complaint that includes the additional parties (Knockouts and Sahara Theater) as well as the additional causes of action, in order to address this Court's concerns.

As such, the Settlement Agreements here do not weigh against approval. *See* Kristensen Decl. ¶ 51.

**5.    *Experience and Views of Counsel and Opinion of Participating Plaintiffs***

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO,

1  2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

2  Plaintiffs' counsel and Defendants' counsel have substantial experience

3  litigating wage and hour cases and handling complex and class actions. Counsel

4  for the Parties knew the strengths and weaknesses of the opposing side's case as

5  can be evidenced by the fully briefed motions before the Court. With the help of

6  an experienced mediator, well-versed in FLSA cases, the Parties were able to

7  reach a Settlement. Plaintiffs' counsel's substantial experience and judgment

8  resulted in this extraordinary Settlement. Additionally, all Plaintiffs have been

9  made aware of the terms of the settlement and have signed the settlement

10 agreement. Accordingly, this factor weighs in favor of approval. *See* Kristensen

11 Decl. ¶¶ 2-22, 52; Exs. 1-12; *see* Mooney Decl. ¶¶ 2-3.

**6.    *Possibility of Fraud or Collusion***

13 When considering this factor, courts may look for indications that the

14 plaintiffs' counsel "allowed the pursuit of their own self-interests and that of

15 certain class members to infect the negotiation" or for "evidence of more 'subtle

16 signs' of collusion, such as 'when counsel receive a disproportionate distribution

17 of the settlement, or when the class receives no monetary distribution but class

18 counsel are amply rewarded.'" *Selk*, 159 F. Supp. 3d at 1180 (quoting *In re*

19 *Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).

20 The proposed Settlement was the result of extensive pre-suit investigation,

21 review of formal and informal discovery, and substantial arm's-length

22 negotiations between counsel, aided by well-known and experienced mediator

23 Judge Meisinger. While Plaintiffs' counsel is receiving payment of reimbursable

24 costs and attorneys' fees from the Settlement, there is nothing out of the ordinary

25 in this arrangement. *See Slezak*, 2017 WL 2688224, at *5 ("[C]ounsel is receiving

26 a substantial fee. However, the class is also receiving a significant monetary

27 benefit."); *Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual

28 settlement payments to be received by opt-in members is based on an analysis of

employee time records and an estimate of the degree of under-compensation during the relevant period. This approach guards against the arbitrariness that might suggest collusion." (citation omitted)). This factor therefore weighs in favor of approval. *See* Kristensen Decl. ¶ 53.

## VIII. ATTORNEYS' FEES

In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or the plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp.3d at 1180 (quoting *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). "Typically, attorneys' fees under the FLSA are determined using the lodestar method. . . . Lodestar amounts are presumed to be reasonable." *Kerzich v. County of Tuolumne*, 335 F.Supp.3d 1179, 1185-86 (E.D. Cal. Aug. 14, 2018).

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." *Cullens v. Georgia Dep't of Transp.*, 29 F.3d 1489, 1492 (11th Cir.1994) (citation omitted); s*ee also Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir.2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the

'lodestar.' . . . The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp*., 926 F.Supp. 1448, 1453 (M.D.Ala.1995) ("After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward.").

Here, Plaintiffs are requesting approval of an allocation of 35% of the settlement amount plus costs in accordance with the Plaintiffs' retainer agreements. 35% of $850,000 is $297,500. The chart below identifies the fees allocated to each client at 45% and 35%:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT | FEES AT 45% | FEES AT 35% |
|---|---|---|---|
| Candace Morinaga | $170,000 | $76,500 | $59,500 |
| Jacqueline Escalona Ruiz | $170,000 | $76,500 | $59,500 |
| Reychel Valdivia | $126,000 | $56,700 | $44,100 |
| Angie Ortega | $126,000 | $56,700 | $44,100 |
| Maya Loewe | $102,000 | $45,900 | $35,700 |
| Sara Galan | $75,000 | $33,750 | $26,250 |
| Cianna Robinson | $45,000 | $20,250 | $15,750 |
| Brittany Thomas | $36,000 | $16,200 | $12,600 |
| **TOTAL** | **$850,000** | **$382,500.00** | **$297,500.00** |

///

///

///

///

///

The chart below identifies the amount to each Plaintiff, with costs distributed evenly:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT | COSTS PER PLAINTIFF | FEES AT 35% | NET TO PLAINTIFF |
|---|---|---|---|---|
| Candace Morinaga | $170,000 | $2,005.52 | $59,500 | $108,494.48 |
| Jacqueline Escalona Ruiz | $170,000 | $2,005.52 | $59,500 | $108,494.48 |
| Reychel Valdivia | $126,000 | $2,005.52 | $44,100 | $79,894.48 |
| Angie Ortega | $126,000 | $2,005.52 | $44,100 | $79,894.48 |
| Maya Loewe | $102,000 | $2,005.52 | $35,700 | $64,284.48 |
| Sara Galan | $75,000 | $2,005.52 | $26,250 | $46,744.48 |
| Cianna Robinson | $45,000 | $2,005.52 | $15,750 | $27,244.28 |
| Brittany Thomas | $36,000 | $2,005.52 | $12,600 | $21,394.48 |
| **TOTAL** | **$850,000** | **$16,044.16** | **$297,500.00** | **$536,445.64** |

Plaintiffs' counsel has submitted detailed billing entries demonstrating that a substantial amount of time and resources was needed to achieve this extraordinary result revealing a lodestar amount of $275,000.00 at the time of filing the original motion in May 2020. The lodestar is estimated at $290,000. As such, Plaintiffs' counsel is merely requesting a fee of 35% (within a modest multiplier of 1.02% to reach the 35%). Each Plaintiff agreed to a 45% in their retainer agreement, which is noted in the Settlement Agreements signed by all Plaintiffs. Further, this was a hard-fought case with experienced opposing counsel

1    who were ready to try this case on the merits in trial (or arbitrations), which

2    would have exponentially increased the amount of attorneys' fees sought. *See*

3    Kristensen Decl. ¶ 54.

4            While we recognize that such a percentage in a class action would be of

5    concern in a common fund settlement or even a hybrid class or collective action,

6    such is not the case here where the action is a standalone FLSA collective action.

7    That is because "the fee-shifting provisions of the FLSA are intended to allow

8    plaintiffs to find competent counsel if legal action is required to compel the

9    employer to pay what is owed, because if the plaintiffs' claims are meritorious,

10   counsel will be able to obtain its fees from defendants regardless of the size of the

11   claims." *Kerzich*, 335 F.Supp.3d at 1188. Additionally, Plaintiffs' counsel took

12   these cases on a contingency fee basis facing uncertainty as to whether any

13   recovery would be achieved at Plaintiffs' counsel's cost. Plaintiffs spent

14   considerable time and effort litigating this matter in good faith with the possibility

15   of no recovery, which is oftentimes common in contingency fee cases. It is widely

16   known that in some cases there is no recovery while in others there is a recovery

17   and a multiplier on counsel's lodestar. Plaintiffs incurred costs of $16,044.16 that

18   are addressed separately. The fact that Plaintiffs' counsel's experience and time

19   resulted in this extraordinary settlement emphasizes that to the extent a lodestar

20   analysis would yield a lower figure, upward adjustment of the lodestar amount of

21   1.02% to reflect the 35% contingency fee pursuant to Plaintiffs' retainer

22   agreements of attorney's fees and costs is reasonable and appropriate. *See*

23   *Crabtree v, Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *7-8 (S.D.

24   Ala. Feb. 14, 2013) (approving an upward adjustment of the plaintiffs' counsel's

25   lodestar amount given the contingency nature of the lawsuit, the merits of the

26   case, and the settlement reached).

27           In common fund cases, the percentage method to calculate attorneys' fees

28   may be used. *Camden I Condo. Ass'n., Inc. v. Dunkle*, 946 F.2d 768, 773 (11th

Cir. 1991) (approving percentage of the fund method of calculating fees). The contingency rate sought in this case (35%) is the exact same percentage awarded by the Northern District of Georgia in another case against exotic dancers. *See Valente v. International Follies, Inc. d/b/a Cheetah et al* . No. 1:15-CV-2477-ELR, Dkt. 249 (N.D. Ga. Feb. 8, 2018).

The contingency rate sought here is also lower than contingency rates approved in individual FLSA cases in this District (45% in *Woodmore* and *Johnson*), and other Districts. *King v. Southern Neurophysiology, Inc.*, No. 2:12-CV-0217-WCO, Dkt. 28 (N.D.Ga. Apr. 18, 2013)(40% contingency fee reasonable in FLSA case); *Crabtree*, 2013 WL 593500 (44%); *Whittington v. Taco Bell of Am., Inc* ., No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D.Colo. Nov. 13, 2013) (adopting the percentage of the fund approach in FLSA settlement and finding that the agreed upon 39% covering fees and costs was reasonable). *See also Cicero v. DirecTV, Inc*., No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small."); *see also Alvarez v. Farmers Ins. Exch*., No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."); *Gomez v. H & R Gunlund Ranches, Inc*., No. CV F 10-1163 LJO MJS, 2011 WL 5884224, at *5 (E.D. Cal. Nov. 23, 2011) (approving fees at 45% of the settlement fund).

Thus, the proposed allocation of attorney's fees does not undermine the fairness or reasonableness of the amounts received by Plaintiffs for purposes of this FLSA settlement. S*ee* Kristensen Decl. ¶ 55.

///

///

///

## IX.    THE COSTS

This Court addressed issues with some of the costs allocations filed with the original motion. Specifically, the Court referenced the costs for Deadlines on Demand and related to Los Angeles Superior Court. Deadlines on Demand is a software program that customizes deadlines for each case for calendaring purposes based on each case's jurisdiction and the Court's local rules. Those costs are passed on to the client. The costs associated with Los Angeles Superior Court were charges to download documents/pleadings from Defendants' prior cases. S*ee* Kristensen Decl. ¶ 56. While not mentioned by the Court, the remaining costs are clarified in counsel's declaration. S*ee* Kristensen Decl. ¶ 57.

## X.    CONCLUSION

For the foregoing reasons, the Parties jointly request that the Court approve the Agreements and enter the proposed Order filed concurrently herewith.


Dated:  November 3, 2020          **KRISTENSEN LLP**

/s/ *John P. Kristensen*
John P. Kristensen
Jesenia A. Martinez
Alejandro Marin
***Attorneys for Plaintiffs***

Dated:  November 3, 2020          **WESTON, GARROU & MOONEY**

/s/ *Jerome H. Mooney (with permission)*
Jerome H. Mooney
***Attorneys for Defendants***

## LOCAL RULE 5-4.3.4(a)(2)(i) CERTIFICATION

The undersigned attests that all other signatories listed above on whose behalf this filing is submitted concur in the filing's content and have authorized the filing.


*/s/ John P. Kristensen*
John P. Kristensen

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Tuesday, November 03, 2020 a true and correct copy of
the attached document described as **JOINT AMENDED MOTION FOR
APPROVAL OF FLSA SETTLEMENT** and accompanying documents
were served via CM/ECF on each participant of record, including the
participants listed below.

Jerome H. Mooney, III
*jerrym@mooneylaw.com*
*Law Offices of Weston, Garrou & Mooney*
12121 Wilshire Boulevard, Suite 525
Los Angeles, California 90025

**Counsel for All Defendants**

*/s/ John P. Kristensen*
John P. Kristensen