John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alejandro Marin (SBN 329185)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Facsimile: 310-507-7906
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*alejandro@kristensenlaw.com*

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MAYA LOEWE, et al. | Case No.: 2:19-CV-08346-CBM-SKx |
| Plaintiff, | **COLLECTIVE ACTION** |
| vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| LONG KIM HUOT, an individual, RONALD LEE MCKINNEY, JR., an individual; TAWNY HUOT, and individual, TODD & KATIE, INC. dba PARADISE SHOWGIRLS, DISCOVER ENTERTAINMENT, INC. dba SYNN GENTLEMAN'S CLUB; DSM ENTERTAIMENT, INC. dba SATIN GENTLEMAN'S CLUB; SOUTHBAY ENTERTAINMENT, LLC dba SATIN TOPLESS; FIGUEROA GROUP, INC. dba RIO's GENTLEMAN'S CLUB; TEAM SAHARA, INC. dba SAHARA THEATER; SOLITAIRE HOLDINGS, INC. dba KNOCKOUTS; DOE MANAGERS 1-3; and DOES 4-10, inclusive, Defendants. | 1. **Failure to Pay Minimum Wage, 29 U.S.C. § 206;** 2. **Failure to Pay Overtime Wages, 29 U.S.C. § 207;** 3. **Unlawful Taking of Tips, 29 U.S.C. § 203;** 4. **Illegal Kickbacks, 29 C.F.R. § 531.35;** 5. **Forced Tip Sharing, 29 C.F.R. § 531.35;** 6. **Failure to Pay Minimum Wage in Violation of Cal. *Lab. Code* §§ 1194 & 1197;** 7. **Failure to Pay Overtime Wages in Violation of Cal. *Lab. Code* §§ 510, 1194, & 1197;** 8. **Failure to Furnish Accurate Wage Statements, Cal. *Lab. Code* § 226;** 9. **Waiting Time Penalties, Cal. *Lab. Code* §§ 201-203;** |

| | |
|---|---|
| ) | **10. Failure to Indemnify Business Expenses in Violation of Cal.** *Lab. Code* **§ 2802;** |
| ) | **11. Compelled Patronization of Employer and/or Other Persons in Violation of Cal.** *Lab. Code* **§ 450;** |
| ) | **12. Violation of Cal.** *Lab. Code* **§§ 350,** *et seq.* |
| ) | **13. Unfair Competition in Violation of Cal.** *Bus. & Prof. Code* **§§ 17200,** *et seq.* |
| ) | **DEMAND FOR JURY TRIAL** |

Plaintiffs Maya Loewe, Reychel Valdivia, Angie Ortega, Cianna Robinson, Candace Morinaga, Jacqueline Escalona Ruiz, Brittany Thomas, and Sara Galan (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.    NATURE OF THE ACTION

1.    Plaintiffs, and all persons similarly situated, allege causes of action against defendants Long Kim Huot, an individual, Ronald Lee McKinney, Jr. an individual, Tawny Huot, an individual, Todd & Katie, Inc. dba Paradise Showgirls, a California business entity, Discover Entertainment, Inc. dba Synn Gentleman's Club, a California business entity, DSM Entertainment Inc. dba Satin Gentleman's Club, a California business entity, Southbay Entertainment, LLC dba Satin Topless, a California business entity, Figueroa Group, Inc. dba Rio's Gentleman's Club, a California business entity, Team Sahara, Inc. dba Sahara Theater, a California business entity, Solitaire Holdings dba Knockouts, a California business entity, Doe Managers 1-3, and Does 4 through 10, inclusive (collectively, "Defendants") for damages.

///

2.      Defendants required and/or permitted Plaintiffs, and all those similarly situated, to work as exotic dancers at their adult entertainment clubs: Satin Gentlemen's Club, Synn Gentlemen's Club, Paradise Showgirls, Rio's Gentleman's Club, Sahara Theater, and Knockouts in Los Angeles County and Orange County, California, in excess of forty (40) hours per week, but refused to compensate them at the applicable minimum wage and overtime rates under both federal and California law. In fact, Defendants refused to compensate Plaintiffs or those similarly situated whatsoever for any hours worked. Plaintiffs, and those similarly situated, were only compensated in the form of tips from club patrons. Moreover, Plaintiffs and those similarly situated were required to divide their tips with Defendants and other employees who do not customarily receive tips. These were all done under the auspices whereby Defendants violated the Fair Labor Standards Act and/or the Tip Income Protection Act, 29 U.S.C. § 203 ("TIPA") and by unlawfully seizing a portion of Plaintiffs' tips. Therefore, Defendants have failed to compensate Plaintiffs at the federally-mandated minimum wage rate.

3.      Defendants' conduct violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a). Defendants also required Plaintiffs to make certain payments to Defendants' employees and others which caused Plaintiffs' wages to drop below the minimum wage and applicable overtime wage, thereby constituting an illegal deduction under the FLSA. As a result of Defendants' violation of the FLSA, Plaintiffs seek all unpaid minimum and overtime wages, recovery of unlawful deductions, liquidated damages, interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216.

4.      During their employment by Defendants, Plaintiffs, and those similarly situated, were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers as "independent

contractors." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.

As alleged in more detail below, that is exactly what Defendants were doing in this case.

5.    Plaintiffs worked at Defendants' clubs, Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts in Los Angeles County and Sahara Theater in Orange County in the three years preceding the filing of the original Complaint on September 26, 2019.

6.    Defendants failed to pay Plaintiffs and those similarly situated minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

7.    Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

8.    Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

9.    Defendants conduct in forcing Plaintiffs and those similarly situated to pay House Fees just to work further violates the FLSA.

10.    Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wages, stolen tips and illegal house fees owed to them individually and on behalf of all other similarly situated employees, current and former, of Defendants in California. Members of the Collective Action are hereinafter referred to as "FLSA Collective Members."

11.    As a result of Defendants' violations, Plaintiffs and the FLSA Collective Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, recover diverted income, interest, and attorneys' fees.

## II.    NATURE OF THE ACTION

12.    Plaintiff Maya Loewe ("Loewe" or "Plaintiff") is an individual adult resident of the State of California. Loewe was employed by Defendants at Rio's, Paradise, and Satin and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action was filed with the original Complaint on September 26, 2019. *See* Dkt. 1.

13.    Plaintiff Reychel Valdivia ("Valdivia" or "Plaintiff") is an individual adult resident of the State of California. Valdivia was employed by Defendants at Rio's and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action was filed on January 13, 2020. *See* Dkt. 33.

14.    Plaintiff Angie Ortega ("Ortega" or "Plaintiff") is an individual adult resident of the State of California. Ortega was employed by Defendants at Rio's and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action was filed on March 16, 2020. *See* Dkt. 44.

15.    Plaintiff Cianna Robinson ("Robinson" or "Plaintiff") is an individual adult resident of the State of California. Robinson was employed by Defendants at

Satin and Knockouts and qualifies as an "employee" of Defendants as defined by the
FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action was filed on January 24,
2020. *See* Dkt. 35.

16. Plaintiff Candace Morinaga ("Robinson" or "Plaintiff") is an individual
adult resident of the State of California. Morinaga was employed by Defendants at
Satin and qualifies as an "employee" of Defendants as defined by the FLSA, 29
U.S.C. § 203(e)(1). Her consent to this action was filed on February 19, 2020. *See*
Dkt. 40.

17. Plaintiff Jacqueline Escalona Ruiz ("Ruiz" or "Plaintiff") is an
individual adult resident of the State of California. Ruiz was employed by
Defendants at Satin and qualifies as an "employee" of Defendants as defined by the
FLSA, 29 U.S.C. § 203(e)(1). Her consent to this action was filed on February 6,
2020. *See* Dkt. 38.

18. Plaintiff Brittany Thomas ("Thomas" or "Plaintiff") is an individual
adult resident of the State of California. Thomas was employed by Defendants at
Satin and qualifies as an "employee" of Defendants as defined by the FLSA, 29
U.S.C. § 203(e)(1). Her consent to this action was filed on February 6, 2020. *See*
Dkt. 38.

19. Plaintiff Sara Galan ("Galan" or "Plaintiff") is an individual adult
resident of the State of California. Galan was employed by Defendants at Satin and
qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. §
203(e)(1). Her consent to this action was filed on February 6, 2020. *See* Dkt. 38.

20. Defendant Long Kim Huot is an individual who resides in Los Angeles
County, California. He is the owner, controlling shareholder, and exerts day to day
management over the defendant entities Todd & Katie, Inc., Discover Entertainment,
Inc., DSM Entertainment Inc., Southbay Entertainment, LLC, Figueroa Group, Inc.,
Team Sahara, Inc., and Solitaire Holdings through which he exerts operational and
management control over Paradise Showgirls Club in City of Industry, California,

Synn Gentleman's Club in City of Industry, California, Satin Gentleman's Club in City of Industry, California, Knockouts in Arcadia, California, Rio's Gentleman's Club in Los Angeles, California, and Sahara Theater in Anaheim, California, respectively. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including defendant Long Kim Huot, as well as the other Defendants herein, refused to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Defendant Long Kim Huot, individually, also exerts day to day management and operational control over Paradise Showgirls Club, Synn Gentleman's Club, Satin Gentleman's Club, Knockouts, Rio's Gentleman's Club, and Sahara Theater and is frequently present at, and owns, directs, controls and manages the operations at the clubs. Defendant Long Kim Huot is an "employer" or "joint employer" within the meaning of the FLSA, and is the registered agent of Todd & Katie, Inc., Southbay Entertainment, LLC and Discover Entertainment, Inc. Upon information and belief, Defendant Long Kim Huot may be served with process individually at the same address where he will be served as the agent of Defendant Todd & Katie, Inc. and Discover Entertainment, Inc. He may also be served at his residence located at 2648 Clear Creek Lane, Diamond Bar, California 91765.

21.  Defendant Ronald Lee McKinney, Jr. is an individual who resides in San Bernardino County, California. He is the owner, controlling shareholder, and exerts day to day management over the defendant entities Todd & Katie, Inc., Discover Entertainment, Inc., DSM Entertainment Inc., Southbay Entertainment, LLC, Figueroa Group, Inc., Team Sahara, Inc., Solitaire Holdings through which he exerts operational and management control Paradise Showgirls Club in City of Industry, California, Synn Gentleman's Club in City of Industry, California, Satin Gentleman's Club in City of Industry, California, Knockouts in Arcadia, California, Rio's Gentleman's Club in Los Angeles, California, and Sahara Theater in Anaheim, California, respectively, and is frequently present at, and owns, directs, controls and

manages the operations at the clubs. Defendant Ronald Lee McKinney, Jr., individually, also exerts day to day management and operational control over the clubs, and is frequently present at, and owns, directs, controls and manages the operations at the clubs. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Defendant Ronald Lee McKinney, Jr. as well as the other Defendants herein, refused to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Defendant Ronald Lee McKinney, Jr. is an "employer" or "joint employer" within the meaning of the FLSA and is the registered agent of Figueroa Group, Inc. Upon information and belief, Defendant Ronald Lee McKinney, Jr. may be served with process individually at the same address where he will be served as the agent of Defendant Figueroa Group, Inc. He may also be served at his residence located at 2985 Briarhaven Lane, Corona, California 92882.

22.     Defendant Tawny Huot is an individual who resides in Los Angeles County, California. She is the owner, controlling shareholder, and exerts day to day management over the defendant entities Todd & Katie Inc., Discovery Entertainment, Inc., Southbay Entertainment, LLC and Figueroa Group, Inc. through which she exerts operational and management control over the Paradise Showgirls Club in City of Industry, California, Satin Gentleman's Club in City of Industry, California and Rio's Gentleman's Club in Los Angeles, California, respectively. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Defendant Tawny Huot, as well as the other Defendants herein, refused to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Defendant Tawny Huot, individually, also exerts day to day management and operational control over Paradise Showgirls Club, Satin Gentleman's Club and Rio's Gentleman's Club, and is frequently present at, and owns, directs, controls and manages the operations at the clubs. Defendant Tawny Huot is an "employer" or "joint employer" within the

meaning of the Fair Labor Standards Act, and is a director and officer of Todd & Katie, Inc., Southbay Entertainment, LLC and Discover Entertainment, Inc. Upon information and belief, Defendant Tawny Huot may be served at her residence located at 2648 Clear Creek Lane, Diamond Bar, California 91765. She is also the owner for the property located at 13124 S. Figueroa Street, Los Angeles, California, where Figueroa Group, Inc. dba Rio's Gentleman's Club is located.

23.    Defendant Todd & Katie, Inc. dba Paradise Showgirls ("Paradise") is a California corporation with its principal place of business at 14310 Valley Boulevard, City of Industry, California 91746. At all times mentioned herein, Paradise was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Paradise's agent for service of process is Defendant Long Kim Huot and is identified to be located, via its filings with the California Secretary of State at 14310 Valley Boulevard, City of Industry, California 91746.

24.    Defendant Discovery Entertainment, Inc. dba Synn Gentleman's Club ("Synn") is a California corporation with its principal place of business at 13079 Valley Boulevard, City of Industry, California 91746. It was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g).

25.    Defendant DSM Entertainment Inc. dba Satin Gentleman's Club is a California corporation with its principal place of business at 15619 Valley Boulevard, City of Industry, California 91746. At all times mentioned herein, Satin was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Satin's agent for service of process is defendant Long Kim Huot and is identified to be located, via its filings with the California Secretary of State at 15619 Valley Boulevard, City of Industry, California 91746.

26.    Defendant Figueroa Group, Inc. dba Rio's Gentleman's Club, ("Rio's") is a California corporation with its principal place of business at 13124 S. Figueroa

Street, Los Angeles, California 90061. At all times mentioned herein, Rio's was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Rio's agent for service of process is Defendant Ronald Lee McKinney, Jr. and is identified to be located, via its filings with the California Secretary of State at 13124 S. Figueroa Street, Los Angeles, California 90061. The property where Rio's is located is owned by defendant Tawny Huot.

27.    Defendant South Bay Entertainment, LLC dba Satin Topless also has its principal place of business at 13124 S. Figueroa Street, Los Angeles, California 90061. It is registered at the same location as Rio's and obtained the liquor license for Satin. It was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Its agent for service of process is Defendant Long Kim Huot and is identified to be located, via its filings with the California Secretary of State at 13124 S. Figueroa Street, Los Angeles, California 90061.

28.    Team Sahara, Inc. dba Sahara Theater ("Sahara") is a California corporation with its principal place of business at 1210 S. State College Boulevard, Anaheim, California 92806. At all times mentioned herein, Sahara was an "employer" or "joint employer" of Galan within the meaning of the FLSA, 29 U.S.C. § 203 (d) and (g). Sahara's agent for service of process is defendant Long Kim Huot.

29.    Defendant Solitaire Holdings, LLC dba Knockouts, a ("Knockouts") is a Delaware Limited Liability Company with its principal place of business at 1580 Clark Street, Arcadia, California, 91006. At all times mentioned herein, Knockouts was an "employer" or "joint employer" of the FLSA, 29 U.S.C. § 203(d) and (g).

30.    Doe Managers 1-3 are the managers/owners who control the policies and enforce the policies related to employment at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

///

31.     Defendants' entire business model was based on taking advantage of Plaintiffs by exploiting them and forcing them to participate in an invalid tip-pool with Defendants and employees of Defendants.

32.     The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOES 4 through 10, inclusive are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief alleges thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiffs, as is hereinafter alleged.

33.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

34.     Plaintiffs are informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiffs in that each of them exercised control over her tips and the establishment's forced tip pooling procedures.

35.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee,

representative, servant, master, employer, owner, agent, joint venture, and alter ego
of each of the other and each was acting within the course and scope of his or her
ownership, agency, service, joint venture and employment.

36.    At all times mentioned herein, each and every Defendant was the
successor of the other and each assumes the responsibility for the acts and omissions
of all other Defendants.

### III.    COVERAGE

37.    At all material times, Defendants have been employers or "joint
employers" within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

38.    At all material times, Defendants have operated as a "single enterprise"
within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1) and 29 C.F.R. §
1620.7. That is, Defendants perform related activities through unified operation and
common control for a common business purpose. *See Brennan v. Arnheim and
Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs. Inc.*, 346 F.3d
908, 914-15 (9th Cir. 2003).

39.    At all material times, Defendants have been an enterprise in commerce
or in the production of goods for commerce within the meaning of 3(r)(1) of the
FLSA because they have had employees engaged in commerce and sell liquor at
their club which has travelled in interstate commerce. Moreover, because of
Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. §
203(s)(1).

40.    Furthermore, Defendants have had, and continue to have, an annual
gross business volume in excess of the statutory standard.

41.    At all material times during the three years prior to the filing of this
action, Defendants categorized all dancers/entertainers employed at Satin
Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's
Club, Knockouts, and Sahara as "independent contractors" and have failed and
refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were

an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

42.    The primary job duties of the named Plaintiffs, and all other dancers similarly situation, consisted primarily of dancing on stage during a stage rotation, performing personal dances (also called "lap dances" or "private dances") for customers, and performing in "VIP" areas upon customer request.

43.    Pursuant to the directions of the Defendants and/or their agents, Defendants require entertainers to audition in order to be hired; however, an entertainer's physical appearance and not any level of dance, performance, or sales skill determines her suitability to perform at Defendants' clubs. Indeed, no prior experience or training is required to be hired as a dancer-entertainer.

44.    At all times relevant to this action, Plaintiffs (and all those similarly situated) were subject to corporate-wide, uniform written rules, guidelines, and policies which were established by Defendants and their agents. The rules, guidelines, and policies governed entertainers' conduct at all of the clubs mentioned herein.

45.     Defendants exercised a great degree of operational control and management over Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara particularly in terms of the conditions of employment applicable to dancers/entertainers.

46.    Defendant Long Kim Huot is the owner, manager, and president of defendants Todd and Katie, Inc. and Discover Entertainment, Inc. and South Bay Entertainment, LLC.

47.    As the owner, operator, and manager of Defendants Todd and Katie, Inc. and Discover Entertainment, Inc. and South Bay Entertainment, LLC. employed Plaintiffs, as and employee who danced for and entertained customers.

///

///

48.    Defendants Long Kim Huot, Tawny Huot and Ronald McKinney, Jr. controlled the nature, pay structure, and employment relationship of Plaintiffs, at both Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara

49.    Further, Defendants Long Kim Huot, Tawny Huot and Ronald McKinney, Jr. had, at all times relevant to this lawsuit, the authority to hire and fire employees at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara, the authority to direct and supervise the work of employees, the authority to sign on the businesses' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.  Additionally, they were responsible for the day-to-day affairs of Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara In particular, they were responsible for determining whether the clubs complied with the FLSA.

50.    As such, pursuant to 29 U.S.C. § 203(d), Defendants Long Kim Huot, Tawny Huot and Ronald McKinney, Jr. acted directly or indirectly in the interest of Plaintiffs' employment as their employers, which makes them each individually liable under the FLSA.

51.    Defendant Ronald McKinney, Jr. is the general manager, and president of Defendants Todd and Katie, Inc. and Discover Entertainment and an officer/director at Rio's.

52.    As the general manager operator, and manager of Defendants Todd and Katie, Inc. and Discover Entertainment, Defendant Ronald Lee McKinney, Jr, and officer/director at Rio's employed Plaintiffs, and employees who danced for and entertained customers.

///

///

## VI.    VENUE AND JURSIDICTION

53.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. § 201, *et seq*.

54.    Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' clubs are located in this District and Plaintiffs, and all those similarly situated, worked in this District.

## V.    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (AGAINST ALL DEFENDANTS)

### A.    FACTUAL ALLEGATIONS

55.    Defendants operate adult entertainment clubs in Los Angeles and Orange Counties under the name of Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

56.    Defendants employ exotic dancers at the aforementioned locations.

57.    Plaintiffs were previously employed as an exotic dancers at Defendants' adult entertainment clubs "Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

58.    Plaintiffs, and those similarly situated, worked on a regular basis for Defendants' establishments located in Los Angeles County and Orange County known as Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

59.    The job of an exotic dancer is to perform on stage, perform table dancers, and entertain customers in a "VIP" area of the Defendants' clubs.

60.    Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishments.

61.    Furthermore, Defendants charged the Plaintiffs a "house fee" per shift worked.  Defendants also required Plaintiffs to share their tips with other non-service

1    employees who do not customarily receive tips, including the managers, disc

2    jockeys, and the bouncers.

3        62.    Defendants illegally classified the dancers as independent contractors.

4    However, at all times, Plaintiffs, were employees of Defendants.

5        63.    Defendants hired/fired, issued pay, supervised, directed, disciplined,

6    scheduled and performed all other duties generally associated with that of an

7    employer with regard to the dancers.

8        64.    In addition, Defendants instructed the dancers about when, where, and

9    how they were to perform their work.

10        65.    Defendants exercised significant control over the misclassified

11    Plaintiffs and the Collective through written and unwritten policies and procedures.

12    The following further demonstrates the dancers' status as employees:

13            a.    Defendants have the sole right to hire and fire the dancers;

14            b.    Defendants required dancers to complete an employee application

15                as a prerequisite to their employment at Satin Gentlemen's Club,

16                Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's

17                Club, Knockouts, and Sahara;

18            c.    Defendants made the decision not to pay overtime;

19            d.    Defendants provide the dancers with music equipment and a

20                performing stage;

21            e.    Defendants supervise the dancers, and required Plaintiffs and

22                those similarly situated to dance on stage according to a stage

23                rotation established by the Defendants or their agents, including

24                the Disc Jockey ("DJ"); dancers, including Plaintiffs were

25                required to dance when their name was called, and dancers were

26                not allowed to choose which songs were played;

27            f.    Plaintiffs have not made a financial investment with or in

28                Defendants' business; Defendants financed all advertising and

marketing efforts undertaken on behalf of Satin Gentlemen's
Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's
Gentleman's Club, Knockouts, and Sahara and made all capital
investments in the facilities, maintenance, sound system, lights,
food, beverage, and inventory, and made all hiring decisions
regarding waitstaff, security, entertainers, managerial, and other
employees at "Satin Gentlemen's Club, Paradise Showgirls, Synn
Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and
Sahara; Plaintiffs and those similarly situated were not allowed by
Defendants or their agents to choose the songs that were played
when they danced;

g.      Defendants schedule dancers, and required dancers to show up for
work at a specific time, with a schedule issued in advance and as
such have sole control over their opportunity for profit;

h.      Defendants suspended dancers for violations of their rules of
conduct, including issuing fines to dancers who came to work
late;

i.      Defendants set the prices for house fees, dances, and tip outs; the
price for a personal dance was the same regardless of which
entertainer performed the dance, and Plaintiffs, and those
similarly situated, were not allowed to charge a different price
than the price established by Defendants; the prices for personal
dances ("lap dances") or private room ("VIP") dances was also set
by the Defendants and was the same regardless of which dancer
was performing a personal dance or spending time in VIP with a
customer;

j.      In addition to house fees, pursuant to the directions of the
Defendants and/or their agents, Plaintiffs and all other

dancers/entertainers at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara were also required to pay "tip outs" each night they worked;

k.    The dancers were hired as permanent employees and many have worked for Defendants for years; and

l.    Little or no skill was required for the work Plaintiffs or those similarly situated was required to perform at Defendants' clubs.

66.    Defendants misclassified Plaintiffs as independent contractors to avoid Defendants' obligation to pay them pursuant to the FLSA, and Plaintiffs were dependent upon customers tips, making their opportunity for profit or loss a function of how much money customers have and are willing to spend and how much Defendants required Plaintiffs to pay in order to work.

67.    At all times pertinent to this action, Defendants regulated entertainers' attire and interactions with customers.

68.    Pursuant to the direction of the Defendants and/or their agents, Plaintiffs and all other dancers/entertainers at the Defendants' clubs were required to show up for work at a specific time, and to make up a schedule in advance. If entertainers are late for work, fail to appear for a scheduled shift, or are deemed to have violated any of the Club's rules, they are charged additional fees or fines.

69.    Plaintiffs, and the members of the Collective they seek to represent, have been subject to a variety of these fees and fines during the last three years; the fees and fines constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs and the Collective are entitled to restitution of all such fees and fines.

70.    Defendants' primary business purpose is to make money; they do so by attracting customers who wish to see women nude or in various stages of undress. The services performed by dancers/entertainers are integral to the success of the

Defendants and Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

71.    Pursuant to the directions of the Defendants and/or their agents, entertainers at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara were not allowed to hire subcontractors to perform their duties for them. The right to dance as an entertainer at Defendants' clubs was a personal right, and only people hired by Defendants' managerial staff were allowed to perform at Defendants' clubs.

72.    Plaintiffs worked over forty hours in some weeks they worked for Defendants.

73.    Defendants have never paid Plaintiffs any amount as wages whatsoever, and have instead unlawfully required Plaintiffs to pay for the privilege of working.

74.    The only source of monies received by Plaintiffs relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which they were required to pay to Defendants.

75.    Although Plaintiffs were required to and do in fact frequently worked more than forty (40) hours per workweek, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they received no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

76.    Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employers within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

77.    Defendants never took possession of the payments made to Plaintiffs or those similarly situated.

78.    Defendants failed to include Plaintiffs' earnings, or those earnings from those similarly situated to Plaintiffs, in Defendants' gross receipts for tax or accounting purposes.

79.    The FLSA "economic realities" test has existed for decades, as have the FLSA requirements of paying minimum wage and overtime to employees.

80.    Defendants' failure to comply with the FLSA in all respects, including the misclassification scheme at issue in this lawsuit, is, and was, willful.

81.    Defendants knew, or showed reckless disregard for the fact that they misclassified dancers as independent contractors, and accordingly failed to pay dancers the minimum wage and overtime wage at the required rate under the FLSA and unlawfully deducted tip-outs and "house fees" from their pay.

82.    Plaintiffs, and those they seek to represent, were not covered by any minimum or overtime wage exemption contained in the FLSA.

83.    Defendants failed to keep adequate records of Plaintiffs' and FLSA Collective Members' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

84.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.    The time of day and day of week on which the employees' work week begins;

b.    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

///

e.    The hours worked each workday and total hours worked each
       workweek;

f.    The total daily or weekly straight time earnings or wages due for
       hours worked during the workday or workweek, exclusive of
       premium overtime compensation;

g.    The total premium for overtime hours. This amount excludes the
       straight-time earnings for overtime hours recorded under this
       section;

h.    The total additions to or deductions from wages paid each pay
       period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the
       total additions and deductions;

j.    The total wages paid each pay period; and

k.    The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

85.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Collective Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Mt. Clemens Pottery Co.* to provide the extent of their unpaid work.

**B.    INDIVIDUAL LIABILITY UNDER THE FLSA**

86.    In *Boucher v. Shaw*, the U.S. Court of Appeals for the Ninth Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer." *Boucher v. Shaw* (9th Cir. 2009) 572 F.3d 1087, 1088.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

87.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley* (9th Cir. 1999) 180 F.3d 997. The Ninth Circuit highlighted factors related to "economic control," which included ownership interest; operational control of significant aspects of the day-to-day functions; the power to hire and fire employees; determine salaries; and the responsibility to maintain employment records.

88.    Defendants Long Kim Huot, Tawny Huot and Ronald McKinney, Jr. are individually liable for failing to pay Plaintiffs their wages. The actual identities of Doe Managers 1-3 (and perhaps Does 4 through 10) are unknown at this time.

## VII.    <u>COLLECTIVE ACTION ALLEGATIONS</u>

89.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

90.    Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at Defendants' clubs Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara at any time during the three (3) years prior to the commencement of this action to present.

91.    Plaintiffs have actual knowledge that FLSA Collective Members have also been denied overtime pay for hours worked over forty hours per workweek,

forced to pay illegal house fees, had gratuities and tips pooled and/or illegally diverted and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara As such, they have first-hand personal knowledge of the same pay violations throughout Defendants' clubs. Furthermore, other exotic dancers at Defendants' clubs "Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara have shared similar pay violation experiences as those described in this Complaint.

92.    Other employees similarly situated to the Plaintiffs work or have worked at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek. The other similarly situated dancers were forced to pay Defendants "house fees" to work and had their tips pooled or diverted. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

93.    Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

94.    FLSA Collective Members perform or have performed the same or similar work as the Plaintiffs, dancing and entertaining at Defendants' clubs.

95.    FLSA Collective Members regularly work or have worked in excess of forty hours during a workweek.

96.    FLSA Collective Members were all subject to the same terms and conditions of employment, and the same degree of control, direction, supervision imposed by Defendants.

///

97.    FLSA Collective Members regularly work or have worked and did not receive minimum wage.

98.    FLSA Collective Members regularly were forced to pay "house fees" in order to work.

99.    FLSA Collective Members regularly had their tips both pooled and diverted.

100.    FLSA Collective Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

101.    As such, FLSA Collective Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

102.    Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

103.    The experiences of the Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Collective Members.

104.    The specific job titles or precise job responsibilities of each FLSA Collective Member does not prevent collective treatment.

105.    All FLSA Collective Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

106.    All FLSA Collective Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

107.    Although the exact number of damages may vary among FLSA Collective Members, the damages for the FLSA Collective Members can be easily calculated by a simple formula. The claims of all FLSA Collective Members arise

from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Collective Members.

108.   Named Plaintiffs are "similarly situated" to the collective of persons they seek to represent, and will adequately represent the interests of the class.

109.   Plaintiffs have hired counsel experienced in labor and employment cases and collective actions under 29 U.S.C. 216(b) who will adequately represent the class.

110.   As such, Plaintiffs brings their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers who worked at the Satin, Synn, Paradise, Rio's, Knockouts, and Sahara in Los Angeles County at any time starting three years before the Original Complaint was filed.**

## VIII. <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>

### FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206
### (By Plaintiffs Individually and on Behalf of the Collective
### Against All Defendants)

111.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

112.   Defendants are or were the "employer" or "joint-employers" and employ(ed) Plaintiffs and those similarly situated, and Plaintiffs and those similarly situated were the "employees" of those "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

113.   Defendants are engaged in "commerce" and/or the production of "goods" for "commerce."

114.    Defendants are an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because their annual gross volume of sales made is more than $500,000.

115.    Plaintiffs consented to sue in this action pursuant to 29 U.S.C. § 216(b). Written Consent to sue executed by Plaintiffs were submitted as discussed previously.

116.    Defendants misclassified Plaintiffs as independent contractors.

117.    Defendants failed to pay Plaintiffs and all others similarly situated wages at a rate of one and one-half times her regular rate, for hours worked in excess of forty hours per week, in violation of 29 U.S.C. § 207.

118.    Defendants knowingly, intentionally and willfully violated the FLSA.

119.    Defendants' mischaracterization of Plaintiffs as independent contractors, with the consequence of having failed to pay them premium overtime compensation for hours worked in excess of forty hours per work week, constitutes a willful violation of the FLSA, and Defendants did not rely on any determinations or rulings of the U.S. Department of Labor in utilizing same.

120.    Due to Defendants' FLSA violations, Plaintiffs and all others similarly situated are entitled to recover from Defendants, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

121.    Defendants' practice of failing to pay Plaintiffs time-and-a-half rate for hours in excess of forty hours per workweek violates the FLSA. 29 U.S.C. § 207. In fact, Defendants do not compensate them whatsoever for any hours worked.

122.    In at least one week Plaintiffs worked more than forty hours per week, but were not compensated at all by Defendants.

123.    None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular

rate at which its employees are employed are applicable to the Defendants or the Plaintiffs.

124.    Due to Defendants' FLSA violations, Plaintiffs and the FLSA Collective Members are entitled to recover from Defendants, minimum wage compensation of $7.25 per hour, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207
### (By Plaintiffs Individually and on Behalf of the Collective
### Against All Defendants)

125.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Demand, as though fully set forth herein.

126.    Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

127.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

128.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because their annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

129.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty hours during each workweek in which they worked in violation of 29 U.S.C. § 207.

130.    Defendants' practice of failing to pay Plaintiffs at the required minimum wage rate violates the FLSA. 29 U.S.C. § 206. In fact, Defendants do not compensate dancers whatsoever for any hours worked.

131.   None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiffs.

132.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

133.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

134.   Due to Defendants' FLSA violations, Plaintiffs and the FLSA Collective Members are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION

### UNLAWFUL TAKING OF TIPS / ILLEGAL DIVERSION-KICKBACKS
### IN VIOLATION OF 29 U.S.C. § 203
### (By Plaintiffs Individually and on Behalf of the Collective
### Against All Defendants)

135.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Demand, as though fully set forth herein.

136.   Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore are tipped employees as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

137.   At all relevant times, each Defendants were "employers" or "joint employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

138.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

139.   Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

140.   Tips belong to the employee: Plaintiffs are entitled to recover payments made by Plaintiffs to Defendants and their employees and workers as part of their minimum wage and overtime wage losses because such payments reduced their wages below the minimum and overtime wage. These types of illegal "kick-backs" that the dancers paid from their tips in order to work are recoverable as part of Plaintiffs' wage loss under 29 C.F.R. § 531.35.

> Unlawful "kick-backs" must be returned to Plaintiffs to bring their lost wages up to zero, and not leave them at a negative number. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995). "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Id*. To fully compensate a minimum wage employee where the employer has improperly required him to pay kickbacks, the Defendant employer must pay the full minimum wage for all time worked, in addition to all fees collected. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995); *Reich v. Circle C Investments, Inc*., 998 F.2d 324, 330 (5th Cir. 1993); *Richard Martin,* No. 13-CV-4242-RWS, at *9 (N.D.Ga. Nov. 20, 2015).

141.   Wages under the FLSA must be received "free and clear" of any improper deduction. *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1241 (11th Cir. 2002. "[R]equiring employees to pay for expenses incurred for the benefit of the employer functions as a *de facto* wage deduction." *De Leon-*

*Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1315 (N.D.Ga. 2008). In fact, there is "no difference between deducting an expense and failing to reimburse an expense." *Id*.

142.   The mandatory payment of house fees and "tip-out" fees required to be paid by entertainers are the exact type of unlawful "kickbacks" prohibited by the FLSA. These payments are recoverable as part of a FLSA wage claim to the extent they reduce the employee's wage below the minimum or overtime rate. *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D.Tex. 1995); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 330 (5th Cir. 1993); *Hart v. Rick's Cabaret International, Inc.*, 60 F.Supp.3d 447, 477 (S.D.N.Y. 2014).  The clubs "practice of collecting a tip out fee . . . violates the FLSA because the deduction further reduces the entertainers' wages below the minimum wage." *Reich.*, 890 F. Supp. at 595. "[T]o fully compensate the entertainers in the amounts required by the FLSA, [the club] must pay them the full minimum wage for all time worked during the limitations period.  In addition, the club must return all tip out fees collected from the entertainers.".  *Id.* "[T]he Court agrees with Plaintiffs that 'the method of calculating Defendants' back wage liability at trial should be (1) $7.25 per hour worked, plus (2) all [house fees] paid by Plaintiffs to Defendants. . . ." *Roger Wilson v. 1400 Northside Drive, Inc.*, Civil Action No. 1:15-CV-4453-SCJ, * 21 (June 15, 2017 N.D.Ga.).

143.   Plaintiffs' (and those similarly situated) post March 2018 employment is covered by the TIPA. Under TIPA:

144.   Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

///

145.   Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJs and floor men in violation of TIPA.

146.   Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the Club DJ, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

147.   The contribution the Defendants required Plaintiffs to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers.

148.   By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

149.   Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

150.   At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

151.   Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates the FLSA.

152.   Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJs, and door men in violation of TIPA.

///

153.   As a result of the acts and omissions of the Defendants as alleged
herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to
damages in the form of all misappropriated tips, plus interest; as liquated damages,
an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and
expenses.

154.   As a result of Defendants willful violation of TIPA, Plaintiffs and the
FLSA Collective Members are entitled to recover, under the FLSA and TIPA, all tips
kept by the employer, any tip credit claimed by Defendants, an equal amount in
liquidated damages and attorneys' fees.

## FOURTH CAUSE OF ACTION

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and on Behalf of the Collective**

**Against All Defendants)**

155.   Plaintiffs hereby incorporate by reference and re-allege each and every
allegation set forth in each and every preceding paragraph as though fully set forth
herein.

156.   Defendants required Plaintiffs to pay monetary fees to Defendants and
other their employees who did not work in positions that are customarily and
regularly tipped, in violation of 29 U.S.C. § 203(m).

157.   Defendants' requirement that Plaintiffs pay fees to Defendants and other
employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

158.   Because Defendants violated the "free and clear" requirement of 29
C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-
credit provision with respect to Plaintiffs' wages.

159.   Because Defendants violated the "free and clear" requirement of 29
C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal
kickbacks.

///

160.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara, involving but not limited to house fees.

## FIFTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

161.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

162.   Defendants required Plaintiffs to pay monetary fees to other Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

163.   Defendants' requirement that Plaintiffs pay fees to other "Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

164.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

165.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara, involving but not limited to forced tip sharing.

///

///

## SIXTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE UNDER CAL. *LAB. CODE* §§ 1194 & 1197
### (By Plaintiffs Individually Against All Defendants)

166.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

167.   Plaintiffs allege, on the basis of information and belief, that Defendants, from the time the applicable statute of limitations begins to the present time, have engaged in the regular practice of requiring or permitting Plaintiffs to work without paying her the legal minimum wage at all times.

168.   Section 2(K) of IWC Wage Order 5 and section 5(H) of IWC Wage Order 10 define "hours worked" as "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so." An employer must pay its employees for all "hours worked."

169.   Defendants did not pay wages for *any* of the time that they controlled Plaintiffs and/or permitted them to work.

170.   Plaintiffs are not exempt from the minimum wage requirements under California law.

171.   Defendants failed to accurately pay Plaintiffs the required legal minimum wage and compensation for all hours worked, in violation of Cal. *Lab. Code* §§ 204, 210, 216, 558, 1194, 1194.12, 1197 and applicable IWC Wage Order(s).

172.   Defendants, and each of them, individually or by and through their respective officers, directors and managing agents, ordered, authorized, approved or ratified the conduct herein alleged with the intent to deprive Plaintiffs compensation and benefits to which she is, and was, entitled under California law, so as to increase Defendants' profits at the expense of the health and welfare of their employees,

contrary to public policy and clear statutory obligations.

173.   As a result of the actions of Defendants in failing and refusing to pay the minimum wages required by law, Plaintiffs were damaged by not receiving compensation which they should have received, but did not receive. Plaintiffs are therefore entitled to compensation in an amount to be proven at trial for unpaid wages, pre-judgment interest, penalties, attorneys' fees and costs pursuant to Cal. *Lab. Code* § 1194 and other applicable statutes.

**SEVENTH CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF**

**CAL. *LAB. CODE* §§ 510, 1194, & 1197**

**(By Plaintiffs Individually Against All Defendants)**

174.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

175.   At all relevant times, Plaintiffs have been non-exempt employees of Defendants and are entitled to the full protections of the California *Labor Code* and of the applicable IWC Wage Order(s).

176.   Cal. *Lab. Code* § 1198 makes it unlawful for an employer to employ any person under conditions of employment that violate the Wage Order.

177.   Section 2(K) of IWC Wage Order 5 and section 2(H) of IWC Wage Order 10 define "hours worked" as "the time during which an employee is subject to the control of the employer, [which] includes all the time the employee is suffered or permitted to work, whether or not required to do so." An employer must pay its employees for all "hours worked."

178.   Cal. *Lab. Code* §§ 510 and 1194, and Section 3 of the Wage Orders, require employers to pay overtime wages to their non-exempt employees at no less than one and one-half (1 ½) times their regular rates of pay for all hours worked in excess of eight (8) hours in one workday, all hours worked in excess of forty (40)

hours in one workweek, and for the first eight (8) hours worked on a seventh consecutive workday.

179.   Cal. *Lab. Code* §§ 510 and 1194, and Section 3 of the Wage Orders, also require employers to pay overtime wages to their non-exempt employees at no less than two (2) times their regular rates of pay for all hours worked in excess of twelve (12) hours in one workday, and for all hours worked in excess of eight (8) hours on a seventh consecutive workday.

180.   At relevant times during their employment, Defendants failed to pay Plaintiffs overtime wages for overtime hours worked.

181.   Pursuant to Cal. *Lab. Code* § 1194, Plaintiffs seek recovery of all unpaid overtime wages, interest thereon, costs of suit, and reasonable attorneys' fees, all in amounts subject to proof.

## EIGHTH CAUSE OF ACTION

### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS,

### CAL. *LAB. CODE* §§ 226, *ET. SEQ.*

### (By Plaintiffs Individually Against All Defendants)

182.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

183.   Cal. *Lab Code* § 226(a) mandates that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an **accurate** itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate

if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment." (Emphasis added.)

184.  Pursuant to Cal. *Lab. Code* § 226(e)(2)(B), "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items" identified above.

185.  As alleged in Plaintiffs' causes of action, Defendants, and each of them, regularly failed to compensate Plaintiffs for all of their overtime hours worked, as well as for their missed meal and rest breaks.

186.  Furthermore, Defendants did not regularly furnished wage statements that identified the inclusive dates for that wage statement, in violation of Cal. *Lab. Code* §§ 226, *et seq.*

187.  Pursuant to Cal. *Lab. Code* § 226, Plaintiffs seek damages, costs of suit, and reasonable attorneys' fees in an amount to be proven at the time of trial.

///

///

///

///

# NINTH CAUSE OF ACTION

## WAITING TIME PENALTIES, CAL. *LAB. CODE* §§ 201-203

### (By Plaintiffs Individually Against All Defendants)

188.  Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

189.  At all times relevant herein, Defendants were required to pay their employees all wages owed in a timely fashion during and at the end of their employment, pursuant to Cal. *Lab. Code* §§ 201–203.

190.  As a pattern and practice, Defendants regularly failed to pay Plaintiffs their final wages pursuant to Cal. *Lab. Code* §§ 201–203, and accordingly owe waiting time penalties pursuant to Cal. *Lab. Code* § 203.

191.  The conduct of Defendants and their agents and managerial employees as described herein was willful, and in violation of the rights of Plaintiffs.

192.   Plaintiffs are informed and believes, and on that basis alleges, that Defendants' willful failure to pay wages due and owed to her upon separation from employment results in a continued payment of wages up to thirty (30) days from the time the wages were due. Therefore, Plaintiffs are entitled to compensation pursuant to Cal. *Lab. Code* § 203.

# TENTH CAUSE OF ACTION

## FAILURE TO INDEMNIFY BUSINESS EXPENSES IN VIOLATION OF

## CAL. *LAB. CODE* § 2802

### (By Plaintiffs Individually Against All Defendants)

193.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

///

///

194.   Cal. *Lab. Code* § 2802 requires employers, including Defendants, to indemnify employees for all necessary expenditures incurred by the employee in performing her job.

195.   As alleged herein, Defendants required Plaintiffs, as a condition of their employment, pay a daily "house fee" and/or "stage fee" of twenty U.S. Dollars ($20) to forty U.S. Dollars ($40.00) in order to fulfill Plaintiff's job duties.

196.   As alleged herein, Defendants required Plaintiffs, as a condition of theirr employment, pay "late fees" and "leave early fees" and any balances from previous shifts in order to fulfill Plaintiffs' job duties.

197.   Such expenditures by Plaintiffs are incurred in direct consequence of the discharge of Plaintiffs' job duties.

198.   As a direct and proximate result of Defendants' failure to reimburse Plaintiffs for these necessary expenditures, Plaintiffs have been injured in an amount to be proved at trial.

199.   Plaintiffs are, therefore, entitled to recover reimbursement for these necessary expenditures, and also to recover costs, interest, and attorneys' fees as provided by California law.

## ELEVENTH CAUSE OF ACTION

### COMPULSION AND COERCION TO PATRONIZE EMPLOYER AND/OR OTHER PERSONS IN VIOLATION OF CAL. *LAB. CODE* §450

### (By Plaintiffs Individually Against All Defendants)

200.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

201.   Cal. *Lab. Code* § 450 provides that no employer "may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value."

///

202.   As alleged herein, Defendants required Plaintiffs to purchase various fees such as the "house fee," the "late fee," and the "leave early fee" from Defendants and/or other specific persons.

203.   As a direct and proximate result of Defendants' requirement that Plaintiffs purchase anything of value, including the "house fee," "stage fee," the "late fee," and the "leave early fee" from Defendants and/or other specific persons, Plaintiffs have been injured in an amount to be proved at trial.

204.   By requiring Plaintiffs to purchase said fees to do their job, Defendants compelled and coerced Plaintiffs to patronize "Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

205.   Plaintiffs are, therefore, entitled to recover damages, and also to recover costs, interest, and attorneys' fees as provided by California law.

## TWELTH CAUSE OF ACTION

### TIP MISAPPROPRIATION IN VIOLATION OF CAL. *LAB. CODE* §§ 350, *ET SEQ.*
### (By Plaintiffs Individually Against All Defendants)

206.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

207.   Cal. *Lab. Code* § 351 makes it illegal for an employer to collect tips paid or left for the employee and mandates that such tips are the employees' property. Moreover, *Lab. Code* § 350(2) provides as follows: Gratuity includes any tip, gratuity, money or part thereof that has been paid or given to or left for an employee by a patron of a business over and above the actual amount due the business for service rendered or for goods, food, drink or articles or served to the patron. **Any amounts paid directly by a patron to a dancer employed by an employer subject to Industrial Welfare Commission Order No. 5 or 10 shall be deemed a** gratuity.

208.   Plaintiffs are entitled to the amounts paid by the patron at Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's

Club, Knockouts, and Sahara that was taken/withheld by Defendants.

209.   Plaintiffs are, therefore, entitled to recover damages, and also to recover costs, interest, and attorney's fees as provided by California law.

### THIRTEENTH CAUSE OF ACTION

#### UNFAIR COMPETITION IN VIOLATION OF

#### CAL. *BUS. & PROF. CODE* §§ 17200, *ET SEQ.*

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

210.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

211.   Cal. *Bus. & Prof. Code* § 17200 defines "unfair competition" to include any unlawful business practice.

212.   Cal. *Bus. & Prof. Code* §17204 allows a person who has lost money or property as a result of unfair competition to bring an action for restitution of money or property acquired from him or her by means of unfair competition.

213.   The FLSA prohibits employers to divert any part of an employee's wages and overtime wages, including tips and gratuity, to itself.

214.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 203 by forcing Plaintiffs and the FLSA Collective Members to participate in an invalid tip-pool with employees who typically do not receive tips. Additionally, Defendants forced Plaintiffs to use portions of their tip wages to pay Defendant managers as well as "house fees" and other fees and fines.

215.   In violation of these requirements, as set forth above, Defendants violated 29 U.S.C. § 206 and 29 U.S.C. § 207 by failing to pay Plaintiffs and the FLSA Collective Members minimum wages and overtime wages, kickbacks and forced tips. Furthermore, the California causes of action are strapped within this UCL claim.

216.   As a result of Defendants' above-alleged unlawful business practices, Plaintiff and the FLSA Collective Members have lost monies and property by means of unfair competition.

217.   In violation of these requirements, as set forth above, Defendants compelled Plaintiffs to patronize Satin Gentlemen's Club, Paradise Showgirls, Synn Gentlemen's Club, Rio's Gentleman's Club, Knockouts, and Sahara.

218.   In violation of these requirements, as set forth above, Defendants failed to pay Plaintiffs overtime wages for hours that they worked.

219.   In violation of these requirements, as set forth above, Defendants failed to pay Plaintiffs minimum wages for the hours that they worked.

220.   In violation of these requirements, as set forth above, Defendants failed to indemnify business expenses to Plaintiffs.

221.   As a result of Defendants' above-alleged unlawful business practices, Plaintiffs have lost monies and property by means of unfair competition.

222.   Pursuant to Cal. *Bus. & Prof. Code* § 17204, Plaintiffs seek an order of restitution for all monies and property that Defendants have acquired from them by means of unfair competition from the forced tip pooling.

223.   Plaintiffs are seeking minimum wages, overtime wages, forced tips and other restitutionary relief under this equitable cause of action for the four years prior to filing this lawsuit.

///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests of this Court the following relief:

1.  For compensatory damages according to proof at trial of at least $100,000 for jurisdictional purposes;

2.  For special damages according to proof at trial;

3.  For restitution of unpaid monies;

4.  For attorneys' fees;

5.  For costs of suit incurred herein;

6.  For statutory penalties;

7.  For civil penalties;

8.  For pre-judgment interest;

9.  For post-judgement interest;

10. For general damages in an amount to be proven at trial;

11. For declaratory relief;

12. For injunctive relief; and

13. For such other and further relief as the tribunal may deem just and proper.

Dated: November 3, 2020                    **KRISTENSEN LLP**

                                           */s/ John P. Kristensen*
                                           John P. Kristensen
                                           Jesenia A. Martinez
                                           Alejandro Marin
                                           ***Attorneys for Plaintiffs***

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury for all such triable claims.


Dated: November 3, 2020                    **KRISTENSEN LLP**

                                           */s/ John P. Kristensen*
                                           John P. Kristensen
                                           Jesenia A. Martinez
                                           Alejandro Marin
                                           ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Wednesday, November 04, 2020 a true and correct copy of the attached document described as **FIRST AMENDED COMPLAINT FOR DAMAGES** was served via CM/ECF on each participant of record, including the participants listed below.

Jerome H. Mooney, III
*jerrym@mooneylaw.com*
*Law Offices of Weston, Garrou & Mooney*
12121 Wilshire Boulevard, Suite 525
Los Angeles, California 90025

**Counsel for All Defendants**

*/s/ John P. Kristensen*

John P. Kristensen